S. B. Hamilton, Jr. v. Commissioner.
Hamilton v. Commissioner
Docket No. 28844.
United States Tax Court
T.C. Memo 1954-118; 1954 Tax Ct. Memo LEXIS 127; 13 T.C.M. (CCH) 761; T.C.M. (RIA) 54224; August 6, 1954, Filed *127 1. Held, the assessment of the tax for the years 1941 and 1942 was barred by the statute of limitations as there was no proof that the taxpayer made false or fraudulent returns with intent to evade tax for those years. 2. The taxpayer possessed $51,000 in cash at the time of his death. Respondent recomputed the taxpayer's income for the years 1941 to 1944, inclusive, upon the assumption that the $51,000 was accumulated during the last five years of his life. Respondent determined a 50 per cent fraud penalty for each of the taxable years 1941 to 1944, inclusive. Held, petitioner did not sustain his burden of proving that respondent's reconstruction for the years 1943 and 1944 was erroneous, and that respondent did not sustain his burden of proving that the deficiency is due to fraud with intent to evade tax. Teddy L. Willocks, Esq., 313 Empire Building, Knoxville, Tenn., for the petitioner. Homer F. Benson, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the tax liability of S. B. Hamilton, Sr., for the taxable years 1941 to 1945, inclusive, in the amounts of $5,184.18, $6,935.24, $8,796.87, $7,245.38, and $655.13, respectively, plus a 50 per cent fraud penalty for each of the taxable years 1941 to 1944, inclusive, and determined that petitioner was liable for said deficiencies as transferee to the extent of the value of the assets received from the estate of S. B. Hamilton, Sr., to wit, $21,246.21. Petitioner does not contest his liability for the deficiency determined for the year 1945. The questions for decision are: 1. Whether the assessment of the tax for the years 1941 to 1944, inclusive, is barred by the statute of limitations, and 2. Whether the respondent correctly determined the taxable net income of S. B. Hamilton, Sr., for the years in question, and, if so, whether the omissions *130 and understatement of taxable income were fraudulent and made with intent to evade the tax. Findings of Fact The taxpayer, S. B. Hamilton, Sr., was a resident of Knox County, Tennessee. His income tax returns for the years involved were filed with the collector of internal revenue for the district of Tennessee. Income tax returns for the calendar years 1941, 1942, 1943, and 1944, with the taxpayer's name signed to them, were received by the collector on March 14, 1942, March 15, 1943, March 8, 1944, and January 15, 1945, respectively. The 1943 and 1944 returns were not signed by the taxpayer. The taxpayer's return for the calendar year 1945 was received by the collector on April 15, 1946, and was filed by S. B. Hamilton, Jr., the petitioner herein, as executor of the taxpayer's will. The taxpayer was a dentist. He began his practice of dentistry in Holly Springs, Tennessee, in 1910. From there he moved to Kingston, Tennessee, and in 1921 he moved to Knoxville, Tennessee. The taxpayer was survived by four children, one of whom is the petitioner. The taxpayer's wife died around 1923, when the oldest child, Ethel Hamilton, was about nine years of age. The taxpayer's sister, Ada *131 Hamilton, lived with the taxpayer thereafter and looked after the children. The taxpayer engaged in the active practice of dentistry until 1934. Around that time his eyesight had failed to the extent that he could no longer see to practice. At all times until his death, however, two, and sometimes three, dentists worked for the taxpayer on a salary and commission basis. The taxpayer also employed a stenographer, Miss Hackney, who received patients, kept the books and records, and performed preliminary examinations. By 1936 the taxpayer could no longer see to read. He was assisted while walking and was driven to and from the office. During the last three or four years of his life he was practically blind and was physically unable to make out his own tax returns for the years 1943 and 1944. He also suffered from a bad heart condition. Nevertheless, he went to the office over half the time until 1945. During 1945 the taxpayer was bedridden. Each Saturday during 1945 his son, petitioner, went to the office and checked the amount of receipts and disbursements. The taxpayer died on January 9, 1946, at the age of 57. None of the taxpayer's records remain in existence for the years 1941 *132 to 1944, inclusive. The taxpayer's returns show a net income of $4,238.10 for 1941, $3,885.65 for 1942, $7,029.47 for 1943, and $7,581.87 for 1944. Respondent determined, by means of the net worth method, that the taxpayer's income was $22,291.03 for 1941, $21,829.43 for 1942, $25,356.94 for 1943, and $23,349.70 for 1944. Respondent's computation was based upon the assumption that the taxpayer possessed no cash at the beginning of 1941. Respondent determined that the taxpayer possessed cash in the amounts of $9,776.74, $22,076.99, $37,840.81, and $41,452.87 at the beginning of 1942, 1943, 1944, and 1945, respectively. There was $51,000 in cash in the taxpayer's safety deposit box when he died in 1946. Opinion Petitioner concedes that he is a transferee of his father's estate to the extent of $21,246.21. Petitioner has affirmatively pleaded that the assessment of the tax is barred by the period of limitation. Under section 311(b) (1) of the Code the period expires unless the tax is assessed against the transferee "* * * within one year after the expiration of the period of limitation for assessment against the taxpayer." Section 311(c) provides that the period for assessment against *133 the taxpayer is not affected by his death. According to the general rule stated in section 275(a) the tax must be assessed against the taxpayer within three years after "the return" was filed, and section 275(f) provides that "* * * a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day." The notice of deficiency was mailed to petitioner on March 14, 1950. As what purport to be the taxpayer's returns for the years 1941 to 1944, inclusive, were each filed on or before March 15 of the following year, then the assessment of the tax for those years is clearly barred unless the papers filed did not constitute "the return" required by section 275(a) or some exception to the general rule is applicable. Respondent concedes that the assessment for the calendar years 1941 and 1942 is barred if the exception contained in section 276(a) is inapplicable. Section 276(a) provides that the tax may be assessed at any time "In the case of a false or fraudulent return with intent to evade tax * * *." Seeking to invoke this exception to the general rule, respondent has the burden of proof. ; *134 . The record is devoid of any evidence that the taxpayer filed false or fraudulent returns with intent to evade the tax for the years 1941 and 1942. The possession of $51,000 in cash by the taxpayer at the time he died does not of itself supply the required proof, and respondent has not met his burden. Respondent contends that neither of the returns filed for the calendar years 1943 and 1944 constituted "the return" required by section 275(a) to start the running of the statute. In support of his contention the respondent relies upon petitioner's testimony that although the taxpayer's name is signed to the returns the signature is not that of the taxpayer. The petitioner's testimony overcomes the presumption that the returns were signed by the taxpayer. Cf. section 51(d), in effect during the pertinent years. The running of the statute of limitations is an affirmative defense to be pleaded and proved by the taxpayer. He must prove that the return filed was "substantially the return required by the effective statute." . An unsigned return is not "the return" required, ; *135 , and, ordinarily, an individual income tax return to which the taxpayer's name is signed by someone other than the taxpayer will not satisfy the requirements of section 51. Petitioner argues that the general rule does not apply, where, as here, the taxpayer was practically blind and unable to make his own return. Under these circumstances section 51(c) provides that "* * * the return shall be made by a duly authorized agent or by the guardian or other person charged with the care of the person or property of such taxpayer." Respondent's Regulations 111, 29.51-2 provide that a return filed by such an agent must be accompanied by a power of attorney. The returns for 1943 and 1944 were not accompanied by a power of attorney. Nor does the record disclose who prepared the returns and signed the taxpayer's name to them. Therefore, petitioner has not shown that the return was made by one of the persons designated in section 51(c); therefore, he has not sustained his burden of proving substantial compliance with the provisions of that section. Furthermore, although section 51(c) relieves an incapacitated taxpayer of the *136 duty of making his own return, it does not eliminate the requirement of section 51(a) that the return "* * * shall contain or be verified by a written declaration that it is made under the penalties of perjury * * *." Signing someone else's name to the return is not a verification, and an individual return lacking a verification is not "substantially the return required by the effective statute." Cf. Sax Rohmer, 21 T.C. - (filed March 31, 1954). Hence, the papers filed which purported to be the taxpayer's returns for the years 1943 and 1944 were not the returns required to start the running of the period of limitation. As there were no records available for the years 1943 and 1944, the respondent recomputed the taxpayer's net income by use of the net worth method. Petitioner has the burden of proving that respondent's reconstruction was erroneous. ; . The only item questioned by petitioner is the amount of beginning cash; therefore, all other items in the reconstruction are deemed to be correct. Respondent based his computation upon the assumption that there was *137 no cash in the taxpayer's safety deposit box at the beginning of 1941. Petitioner contends that there was approximately $50,000 in cash in the box at that time or sufficient cash to eliminate the entire deficiency. Petitioner's case is based entirely on his own uncorroborated testimony which is substantially as follows: In 1936, when petitioner was approximately nineteen years of age, he accompanied his father to the bank and was shown the contents of his father's safety deposit box. The box contained envelopes which his father removed and placed upon the table. The envelopes contained money which the petitioner saw but did not count. The taxpayer showed the petitioner how the envelopes were marked with the amounts purportedly contained therein. Petitioner added the amounts marked on the envelopes which totaled more than $50,000 before petitioner's father picked up the remaining envelopes and returned them to the box. The majority of the envelopes bore the name "Hamilton Dental Infirmary", a name which the taxpayer was required to abandon around 1935. Petitioner visited the box a few times thereafter, and, although petitioner did not again attempt to count the money until after his *138 father's death, the contents of the box appeared the same. Petitioner was present when the box was opened subsequent to his father's death. There was $51,000 in the box at that time in old envelopes. The majority of the envelopes bore the name "Hamilton Dental Infirmary" and appeared the same as the envelopes seen by petitioner in 1936. Even if petitioner's testimony is accepted at face value, it does not establish the amount of money in the box in 1936. Petitioner did not count the money and there is no competent evidence that the amounts marked on the envelopes equalled the amounts contained therein. Furthermore, there is no evidence as to the amount of cash, if any, possessed by the taxpayer at the beginning of 1941 or at any time thereafter prior to the taxpayer's death. Also, petitioner's testimony was wholly uncorroborated. It is inconceivable that the taxpayer's sister, his secretary, his other children, friends, the custodian of the safety deposit box, the dentists who worked for him, or someone could not have given testimony which would have shed more light on taxpayer's income during the taxable years and whether or not he consistently hoarded large sums of money in his *139 safety deposit box. His sister had lived with and kept house for him for many years. His secretary, with business college training, kept his records and apparently ran his office for him. Petitioner called her the "brains and money" when, after his father's death, he sold his father's business to the dentists who had been working for him. She could no doubt have testified as to the amount earned by the taxpayer in the years involved and what became of the records kept during those years. Petitioner testified she was still living in Knoxville at the time of the hearing. The dentists who had been working for taxpayer and who petitioner testified were paid in whole or in part on a commission basis, could certainly have furnished information from which some informed estimate of the taxpayer's income during the crucial years could have been obtained. Being practically blind and unable to see to read during the last several years of his life, and having to be assisted while working and driven to and from his office, someone must have accompanied him when he visited the safety deposit box. The failure to offer any such evidence might be regarded as an indication that such testimony would *140 have been unfavorable to petitioner. Cf. ; , affd. . To consider otherwise would force us to the conclusion that, to say the least, this case has been most ineptly tried. The availability of such testimony has also been taken into consideration in connection with our determination that respondent has not established that the taxpayer made false and fraudulent returns with intent to evade tax for the years involved. In our opinion petitioner has not carried his burden of proving respondent erred in assuming that the taxpayer possessed no cash at the beginning of 1941 and no more than $22,076.99 in cash at the beginning of 1943. Therefore, respondent's determination of deficiencies for the years 1943 and 1944 is sustained. Respondent seeks to impose a 50 per cent penalty under section 293(b). Respondent has the burden of proof on this issue, and, as there is no evidence that the "* * * deficiency is due to fraud with intent to evade tax * * *", he has not sustained his burden. Decision will be entered under Rule 50.